## ELLIOTT v. MACKORELL.

1. For a trustee to apply money then impressed with a trust in part payment for land, and to give mortgage for balance due, would be a breach of trust. *Mathews* v. *Heyward,* 2 *S. C.* 239. Not so, however, when the trust is created by the deed executed contemporaneously with the mortgage. *Barrett* v. *Cochran,* 8 *S. C.* 49 and 11 *S. C.* 35.

2. The purpose of the homestead provisions in the constitution was not to create any new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemption by forbidding the use of the process of the court to sell certain property for the payment of debts.

3. A homestead is not an estate but a mere right of exemption from seizure and sale for the payment of debt.

4. The constitution does not authorize the legislature to take property away from one man and vest it in another—not even in his wife and children.

5. A debtor has the right to sell or mortgage his homestead after it has been assigned to him, and the legislature has no power to deprive him of such right.

6. A debtor's land was sold under execution, and $1,000 of the purchase-money was reserved as a homestead exemption under an order of court requiring the sheriff to apply such money to the "purchase of a homestead for defendant, under his direction, and that he have leave to take title for the same in the name of his wife and in trust for his children." Subsequently the sheriff, by defendant's direction, paid the money to the purchaser of this land (who was the execution plaintiff), who made deed to such defendant as trustee for his wife and children, and at the same time took mortgage for a credit portion of the purchase-money. *Held*, that there was no trust created prior to the execution of this deed and contemporary mortgage; that the transaction was unobjectionable, and that the mortgage was entitled to payment before any application of the proceeds of sale to the purposes of the trust.

MR. JUSTICE McGOWAN *dissenting.*

Before WITHERSPOON, J., Fairfield, September, 1882.

The opinion states the case.

*Mr. A. S. Douglass,* for appellants, cited the several homestead acts and also the following authorities: *Thomp. Homest.,* §§ 43, 465, 453, 502; *Cooley Const. Lim.* 442–449, 352; 3 *Blacks. Com.* 418; *Pott. Dwar.* 185, 203, 209, 213; 7 *S. C.* 19; 1 *Jones Mort.,* §§ 731, 466; 2 *Id.* 1632; 8 *S. C.* 49; 11 *Id.* 30.

*Mr. A. M. Mackey,* contra, also cited the homestead statutes and *Tiff. & B. Trusts* 354; *Smythe Homest.,* §§ 254, 262; *Thomp. Homest.,* §§ 470–473; 1 *Perry Trusts* 452, 460; *Lew. Trusts* 138, 802; 2 *S. C.* 227, 244; 7 *Id.* 1, 149; *Herm. Exec.* 120; 36 *Am. Rep.* 730, *note; Freem. Exec.* 239; *Freem. Co-ten. & P.,* §§ 50, 51.

April 19th, 1883. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On May 9th, 1877, R. J. McCarley obtained judgment against the defendant, John C. Mackorell, for the sum of $1,136.26, and, under the execution issued to enforce this judgment, the tract of land which is the subject-matter of the present action was levied on by the sheriff. Appraisers were appointed to set off the homestead of the judgment debtor, who certified that they valued the premises levied upon at the sum of $2,275, and that, in their judgment, the premises could not be divided so as to set off the homestead without injury to the remainder. The judgment debtor, John C. Mackorell, waived the sixty days' time allowed him by the act to pay the difference between the appraised value and the amount of the homestead exemption, and, accordingly, the premises were sold by the sheriff on September 3d, 1877, for the sum of $2,232.04 to R. J. Mc-Carley, who complied with his bid by paying to the sheriff $1,000 and the costs, in cash, and receipting on his execution for the balance of his bid, whereupon the sheriff made titles to him in the usual form.

On October 25th, 1877, upon the application of John C. Mackorell, the court ordered "that the said sum of one thousand dollars be applied by the said sheriff to the purchase of a homestead for the said defendant, under the direction of the defendant, and that the defendant have leave to take title for the same in the name of his wife and in trust for the children of the said defendant." On December 17th, 1877, R. J. McCarley sold and conveyed to John C. Mackorell the premises in question for $2,200, receiving from the sheriff $1,000 in cash, and receipting to him for said sum, as the "amount of defendant's homestead invested by order of the court"; and, to secure the balance of the purchase-money, Mackorell gave to McCarley his bond as trustee for his wife and children, secured by a mortgage of the premises—the title having been made to Mackorell as trustee for his wife and children—the deed, bond and mortgage having been executed simultaneously.

This action is now brought by the plaintiff, who had been appointed receiver of the estate of R. J. McCarley, to foreclose said mortgage, and John C. Mackorell and his wife and children

are made parties defendant to the action. The Circuit judge held that the sum of $1,000, held by the sheriff, was a trust fund, and that it was a breach of trust to invest such fund in land which was to be encumbered by a mortgage to secure the credit portion of the purchase-money; that McCarley had notice of such breach of trust, and that the plaintiff, as receiver, was bound to the same extent that McCarley would be; and therefore, that the plaintiff is not entitled to receive any portion of the proceeds of the sale of the mortgaged premises until the said trust fund is replaced. He, therefore, rendered judgment for foreclosure, but provided in the order that the mortgaged premises should be withdrawn from sale unless they brought more than $1,000 and costs; and, if they brought more than that amount, then that the sum of $1,000 should be retained by the clerk, subject to the further order of the court, and that the plaintiff should only be entitled to so much of the excess over said sum of $1,000 and costs as might be necessary to pay the amount due him.

From this judgment the plaintiff appeals upon various grounds which, under the view we take of the case, need not be set out here. The substantial question made by the appeal, and the one upon which the case must turn, is as to the character of the fund of $1,000 in the hands of the sheriff, representing the homestead of the judgment debtor, John C. Mackorell. If that fund had been impressed with a trust before the purchase of the land from McCarley by Mackorell on December 17th, 1877, when the deed and bond and mortgage were contemporaneously executed, then upon the authority of *Mathews* v. *Heyward*, 2 *S. C.* 239, it was a breach of trust to invest the same in land to be encumbered with a mortgage to secure the payment of a portion of the purchase-money, and the mortgagee, McCarley, who must be regarded as having notice, took his mortgage subject to such trust, and cannot enforce it until provision is made for replacing such fund, and the plaintiff who stands in his shoes has no higher right than he has.

But if, on the other hand, such fund was not impressed with any trust until it was created by the deed contemporaneous with the mortgage, then the lien of the mortgage is not impaired by

the trust, and the plaintiff is entitled to his judgment of fore-closure in the usual form. *Barrett* v. *Cochran*, 8 *S. C.* 49 ; same case in 11 *S. C.* 35. For in that event, as is said in *Barrett* v. *Cochran,* where first reported, " The trust must be considered as created by the deed to Barrett [Mackorell], which must be con-strued together with the mortgage as contemporary acts. The burden on the trust estate was, under this view, created by the very act calling the trust into existence, and its imposition must be deemed consistent with the purposes of the trust."

The practical question, therefore, in this case is, whether the fund of $1,000 had been impressed with any trust before the execution of the deed from McCarley to Mackorell. To deter-mine this question it is necessary to ascertain what is the nature of the homestead right as created by the constitution and the laws passed in pursuance thereof. It is derived from section 20, article I., and section 32, article II. of the constitution, and is regulated by such acts of the general assembly as have been passed in conformity to these constitutional provisions. Looking to these sections we find nothing indicating a purpose to create or provide for any new kind of estate, as an estate of homestead, but the manifest purpose and declared object is simply to protect a certain amount of property from levy and sale, under mesne or final process ; the language of the one section being : " A reasonable amount of property as a homestead, shall be ex-empted from seizure or sale for the payment of any debts or liabilities except for the payment of such obligations as are pro-vided for in the constitution," while that of the other section, which goes more into detail as to the amount and character of the property to be exempted, and to the class of debts constitut-ing the exceptions, is, that the property mentioned " Shall be exempt from attachment, levy or sale on any mesne or final process issued from any court."

The purpose then was not to create any new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemp-tion by forbidding the use of the process of the court to sell certain property for the payment of debts. It is true that it has not been uncommon to find, even in acts of the legislature and

judicial opinions, the right of homestead spoken of as an estate, but such a characterization of the right of homestead is not warranted by anything contained in the fundamental law. Indeed it would be altogether beyond the competency of the legislature to divest one man of his estate and vest it in another, even though such other might be his wife or child; nor would it be competent for the legislature to change the character of the estate which the citizen has in his property without his consent, by declaring that in a certain event he shall hold such property in trust for his wife or child. As is said in *Cooley on Const. Lim.* 357, "There is no rule or principle known to our system under which private property can be taken from one person and transferred to another, for the private use and benefit of such other person, whether by general law or special enactment." And again, at page 530, "It is conceded on all hands, that the legislature has no power in any case to take the property of one individual and pass it over to another, without reference to some use to which it is to be applied for the public benefit." It is clear, therefore, that the right of homestead is not an estate, but a mere right of exemption by which the estate of a person recognized as already existing is protected from seizure and sale for the payment of debt. If, therefore, the legislature had undertaken to declare in express terms that the homestead should be held by the head of the family in trust for his wife and children, such legislation would have been clearly unconstitutional and void, and the head of the family would continue to hold the property constituting the homestead by the same right as before, and would have the power to use and dispose of it in the same way as he could of any other property which belongs to him absolutely, either by sale or mortgage. *Homestead Association* v. *Enslow*, 7 *S. C.* 1; *Rosenberg* v. *Lewi*, 7 *S. C.* 344.

It is true that in these cases the mortgages, the lien of which was held to be superior to the right of exemption claimed under the homestead laws, were executed before the homestead had been assigned or set off to the debtor, but it is difficult to conceive what difference that could make. The right would be the same after as well as before the assignment, the only effect of which would be to designate specifically what was before

unascertained—the metes and bounds of the land exempted. The laying off of the homestead could not possibly affect, or in any way change the nature of the estate which the debtor held in the property exempted; and even if the legislature had undertaken to declare, in the most explicit terms—as they have not—that after the homestead has been laid off, the debtor shall not have the power to sell or mortgage the property so laid off, or that he shall thereafter hold it in trust for his wife and children, or in any other way undertake to interfere with the owner's right of dominion, they would not have had the power so to do, as it would be an attempt to interfere with vested rights which, as Judge Cooley says, cannot be done under any rule or principle known to our system of law.

The legislature undoubtedly has the power, by virtue of its control over the remedies provided for the collection of debts, to prescribe the mode and manner in which the process of the courts may be used, and place limitations upon such use, provided they keep within the limits of the constitutional provision which forbids them passing a law impairing the obligation of a contract, but should they undertake to divest vested rights and declare that one man's property shall be transferred to another, or shall be held in trust for another, it would become a very different matter, and it would be impossible to see how such an exercise of legislative power could be vindicated. So, too, the legislature, by virtue of their power to prescribe the laws of descent and inheritance, may declare what disposition shall be made of a person's estate after his death, and, in so doing, may declare that the property exempted under the homestead laws shall vest in his wife for life, or his wife and minor children, or make any other provision they see fit as to the disposition to be made of such property, but that is a very different thing from requiring a person while living to make any particular disposition of his property, or any part thereof, without his consent.

When, therefore, the fund of $1,000, which had been exempted from liability for the debts of John C. Mackorell, by virtue of the homestead provisions, went into the hands of the sheriff, it went there as Mackorell's property, to which he had the same right as he had before the sheriff's sale. He had the

right, therefore, to use and dispose of it as he pleased. He might, by a declaration of trust in writing, impress upon it any trust that he might see fit to create, or he might invest it in land and take the conveyance to himself, or to another upon such trusts as he chose to impress upon it, but, until he did so, the fund remained his own absolutely, to do with as he pleased.

The inquiry then presents itself: Did John C. Mackorell impress any trust whatever upon this fund before he invested it in the land and took the title in which the trust was created contemporaneously with the lien of the mortgage. There is certainly no evidence that he executed any declaration of trust in writing, signed by him, which is required by chapter XCIII., § 5, p. 466, *Gen. Stat.* of 1872, which was the law in force at the time these transactions occurred, by which the rights of the parties were fixed, and is yet the law, (*Gen. Stat.* of 1882, § 1961,) if this fund is to be regarded in equity as land, as was contended for with much force by respondent's counsel. But even if a writing is not necessary, where is the evidence that Mackorell, in any way, imparted a trust character to this fund before investing it in the land covered by the mortgage sought to be foreclosed by these proceedings.

The order of the court, which, indeed, was wholly unnecessary, is not such a dedication of the fund as would impart to it a trust character, for, even if the court had undertaken, in express terms, to impress a trust upon the fund, it would have had no power to do so without the consent of Mackorell. But the court did not even attempt to do anything of the kind. The very terms of the order, which has hereinbefore been set out, show that the court recognized the right of Mackorell (referred to in the order as "the defendant") to the fund, for the sheriff was directed to apply the money to the purchase of a homestead "for the defendant and under his directions," and that the defendant should "have leave to take title"—not that he should take title—"in the name of his wife and in trust for his children." It is plain that the order of the court not only could not impress any trust upon the fund, but that it did not even purport so to do.

Even if the application for this order by Mackorell should

be regarded as an indication of his intention to impress a trust upon the fund, that would not be sufficient, for entertaining and even expressing an intention to do a thing and actually doing it are two very distinct and different matters, attended by wholly different consequences. Indeed, as matter of fact, the intention of Mackorell, as indicated by the order, was never carried into effect, for the leave given was to take title "in the name of his wife and in trust for the children of the said defendant," while the act done by Mackorell was to take title in his own name in trust for his wife and children; and this illustrates the difference between a mere intention and an act.

Again, if a trust was created on the day the order was passed, what were the terms of such trust? Would it be possible for any one to say? Was the property to be held in trust for the sole and separate use of the wife during her life, and after her death for the children? Or was it to be held in trust for the wife and childen jointly? Or what were the terms of the trust? It must be manifest that no trust was then created. Nor can it be said that the trusts declared by the deed must be connected with the direction given in the order, so as to make the latter the mere formal execution of the purpose declared in the order, ·for, as we have seen, the title was not taken as contemplated by the order.

But, suppose it is regarded as being a substantial compliance with the terms of the order, then how can it be said that the investment of trust funds, under the order of the court, was a breach of trust? We are unable to see how the fund of $1,000, in the hands of the sheriff, can be regarded as having been impressed with any trust until such trust was created by the deed from McCarley to Mackorell, which must be construed with the mortgage as contemporaneous acts. The encumbrance, having been created by the same act which brought the trust into existence, it must be deemed consistent with the purposes of the trust, (*Barrett* v. *Cochran, supra,*) and hence the plaintiff is entitled to have his mortgage debt paid before any portion of the proceeds of the sale of the mortgaged premises can be reserved to meet the purposes of the trust.

The judgment of this court is that the judgment of the

Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry into effect the views herein announced.

Mr. Chief Justice Simpson concurred and Mr. Justice McGowan dissented.